Good morning. May it please the court, I'm Greg Bartolome on behalf of Appellant Counsel. I would like to reserve a minute for rebuttal if possible. As the court knows, the issue that we raise has to do with the denial by the district court of an evidentiary hearing on our motion to suppress, and we also raise the fact that we believe a judicial notice was improperly taken by the court in making its ruling. We believe that both of those issues are inextricably intertwined. What facts were in dispute in the district court that necessitated there be an evidentiary hearing? Your Honor, the motion, the original motion filed by the defendant concerned the position that the police exceeded Terry and the scope of Terry in terms of the search. The government responded with a bunch of generic facts with no specific detail or no particulars, and the reply filed by the defendant contested those facts. And I think the main, if we were to get to the gist of what's at issue, it's the court's reliance on the government's position that there was some inherent danger to the police based upon the neighborhood where this search took place. We challenge that. How do you account for your statement in the reply memorandum that the government's response provided no new facts justifying the detention or search? It's justified by virtue of the nature of what the government set forth. If you're going to say that an area is dangerous, you should provide some particulars. Where does that come in? The car was stopped legitimately because of the driver. I gather legitimately they asked your client to get out of the car and to wait for a while? Actually, he sat in the car for a while until they arrested the driver. Right, and then they asked him to get out because he had to search the car. Did they have the right to detain him while they searched the car? I think they had the right to ask him to stay in the car and maintain the status quo, and even to get out of the car if they felt it was necessary under the circumstances. All right. So at what point does the relevance So when does the Fourth Amendment problem kick in with regard to your client? After he has sat in the car, they've arrested the driver, he gets out, they pat him down, and they feel something. Is the patting down that's the problem? Yes, because the patting down revealed the container, which was about the size of a PEZ container. Why wasn't it opening the container that was the problem? That is the problem. Because opening the container has nothing to do with anything that, whether the area was dangerous or anything else. I mean, the question is, did they have the right to enter, to open the container without regard to anything else? Well, our position is they did not. But that gets back to the question of why do you need an evidentiary hearing. Either it was okay to open the container or it wasn't okay to open the container. What does the evidentiary hearing have to do with it? I understand. I see. Because the district court was relying upon the government's position that the totality of the circumstances, which included the neighborhood where this took place, justified the police in doing that, as opposed to the police And opening the container, that can't be right. I mean, it may have been the reason for patting him down, but how could it be the reason for opening the container? Once they had the container, the character of the neighborhood has nothing to do with anything. I believe that that's our position and the government seems to feel that that was justified. When you change your position on the court of appeals in the district court, you did not contest before the district court that that he the police had no probable cause or or or suspicion, reasonable suspicion to open up the Pez or whatever this thing was. Actually, Judge, I thought that in the motion and in the reply, that was what trial counsel did. She was no, no, no, no. You never contested in the district court, as far as I could see in that motion or any other application to the district court, that the police had no justifiable suspicion to open up the Pez, this candy thing or whatever. So how if that be true, as I understand, Ninth Circuit law is pretty clear that you can't raise it before us. If that were true, Judge, but I think in the reply, she said that once it was  the Pez, that's where she was going to go on his way, and that's where she was getting toward going towards in saying that they exceeded the scope of Terry. Yeah. But don't you have to say that he had no suspicion, reasonable suspicion to open up the Pez? I believe she did by referring to United States versus Thomas, and that was where what she predicated her entire basis for the motion to support a good part of the government's argument about opening up the Pez is consent. They raised several, Judge. Mostly, the way I read the record, it's the inherent or the alleged inherent dangerousness of the community where the stop took place. But how does that make sense? Opening up a Pez container? I mean, what's supposed to be in a Pez container that's dangerous? I don't know. But that's what the government, that's the government's position. I thought their argument was that he said, pull it out and check. Well, Judge, they make that argument. That was never conceded by trial counsel in her in her moving papers. That's one of many things that were never conceded. Well, it was conceded in that you never said you said that there was no factual issue before the district court. You said even the government's reply didn't have any factual issue. And if you thought there was a factual issue that they could not open up the Pez, weren't you obligated to bring that to the district court's attention? Judge, I believe that what trial what trial counsel said was that the response did not present any facts to clarify what had been what had already been alleged. It just created new facts that she was responding to in the reply. Don't you don't you acknowledge that your client said when he felt this thing in his pocket that he said he could take it out? Trial counsel never conceded that, Judge. I think that issue was in dispute and that would have come out in an evidentiary hearing where he could have testified to what happened there. If not conceded, if not conceded, would you acknowledge that if a police officer while frisking someone or terrorist stopping someone that you're patting him down, tells an object such as this, that the officer would be justified in taking a look at it could be a weapon. If the officer has a reasonable suspicion that that could be a weapon and it's harmful to him or anyone else. Absolutely. Does that fit the facts in this case then? No. Why? Because it's there's a difference between feeling something, determining that it's harmless and then starting to. Well, he doesn't know it's harmless until he pulls it out. Well, he knows it's a pest container. It's not a gun. It's not a knife. Wait. He doesn't know what it is until he takes it out. I'm saying, does he have reasonable suspicion sufficient to take it out of the man's pocket and look at it? I think reasonable suspicion is, is, is okay to the point of patting it down to make sure it's not a weapon. That's as far as Terry goes. Going beyond that requires probable cause. Are you contesting that the patting him down? Yes. When, when, in your view, did the traffic stop, uh, terminate each day they stopped this vehicle. You acknowledge that they can hold the passengers as well as the driver for a period of time in your view, when did this traffic stop terminated, uh, such that, uh, everyone that wasn't arrested is free to, uh, do whatever they've got to go. At the point in time where Mr. Doan, the defendant is taken out of the car. There's no longer a reason for him to, to be detained. There's no longer a reason for him to question. He made no claims to the car. He didn't ask to drive the car. He didn't ask to do anything. He wasn't connected with the neighborhood. Could he have walked away at that point when they said to step out of the car and just wait here? Could he have walked away? They could have, they could, he couldn't have, because there were officers were surrounding him. And I think that could have been developed. Was, should he have been permitted at that point after they stopped the car and they said, step out or wait here. Is it your position that at that point they should have let him walk away? Yes. At that point that he was not wanted for anything. He was not a fugitive. He was not suspected of anything. He didn't know the traffic stop is not terminated yet. Well, they already had the person who was driving the car and who claimed that she had the registration, which blew out the window. It had nothing to do with him. She hadn't been arrested yet. She had been arrested. Judge, uh, he stayed, he was told that he was kept in the car. She, the officer on, on under lock came and grabbed her handcuffed or took her back, told the other officers, stay with him. We're going to be searching. But isn't there support for the proposition that until that, when he's a passenger in the car, until they searched the car, they can detain him. They can maintain the status quo. Yes, there is. So, so therefore they, so therefore it didn't terminate until she had been arrested and they searched the car. I know. But at that point where he's taken out and they, he's no longer a threat to anyone. Well, that's the question, not the answer. I suppose that's why they batted him down. Yes. And we haven't found no weapon. He should have been let go. Well, that's different, but now you're switching gears. Yeah. Yeah. If, if they could detain her, the traffic stop was not over. They could detain the passengers. They pat him down. If we believe, if we conclude that they can legitimately, uh, take the, the, the, this object they feel out or that he consented to it, let us say we go either one of those ways. Is it your position that having looked at this thing, they had no right to determine whether or not this was a legitimate candy wrap or whatever it is, or maybe, uh, has some sort of weapon in it. It is my, it is our position that they had no right to go into the container. It's also our position that the reasonableness and the length of the, of the detention or of the stop with regards to Mr. Doan is something that district court should have explored at an evidentiary hearing, which is why we know that this Pez does not have a, a, you know, there, there are pen knives I've seen, and even pencils that are guns that are very small. That didn't shoot a projectile. Uh, how did they know looking at this, that there's not some, some weapon inside this thing, a knife for instance, or that could be a danger to them while they're executing this traffic stop. I understand. But I think the officers are, are required under Terry to, to stop at a certain point if they don't have probable cause. When did that, when did that point stop though? When they, when they already were able to tell that it was a candy dispenser, not a They don't know whether it's a gun or a knife in there until they open it up. Do they? Well, I think the, uh, the officers could tell by the size of the container that it wasn't, but again, an evidentiary hearing would have shown that and would have brought it all out. Okay. Thank you very much. Counsel. I'm replying to just bring my attention. Where in the district court, if you have the ability to point out to us where the district court, you asked for an evidentiary hearing. It's on the front page of the motion. All right. Well, just, just read it to me when you get a chance. I'm replying. Thank you. Okay. Counsel. Good morning. My name is Michael Lee with the U.S. attorney's office in the district of Arizona. When counsel distinguished members of the panel, I do need to make one clarification. We have referred to this candy container as a PEZ dispenser. Uh, that was not the case. Um, that was going to be, that was intimated as going to be in a unique defense and trial that the ammunition clip that the defendant held onto was somehow a PEZ dispenser without the head of the PEZ dispenser on it. What was pulled out of the pocket was a cylinder about two to three inches in length that, uh, was commonly used to hold a very small candies. Well, counsel, why didn't the encounter become unconstitutional when they determined the candy dispenser or the cylindrical object was not a weapon? Uh, why didn't it become unconstitutional when they proceeded to open it anyway? Well, for two reasons. Uh, the first reason is, is that they, the defendant provided consent for it to come out. He said, pull it out and check. With consent, the consent was reasonable. Pull it out and check. And yes, you did. You pulled it out and checked. You saw it was a candy container. Then where do you get the consent to open it up? Because the, he said he could pull it out and check. We, the government's position is, is that he has the container in his hand. He can, uh, he can open up the container to see what it is. It's just a small cylinder. If we conclude there's consent to pull it out and look at it, but, but not to open it up, what in law would allow you to, if you had consent to look at it, to allow you to also open it up and see what was inside? Well, if you conclude the consent that was given did not allow it to be opened, it would allow, again, to make sure that this wasn't, this didn't contain a weapon. It contained a hypodermic needle. Why isn't this a reason then to have a, an evidentiary hearing? I mean, I, I don't, I don't, whether that's plausible or not plausible really depends on what this candy container looked like, how big it was, um, uh, and whether there's any, you know, sensible way it could have contained a weapon. I mean, the way I'm imagining it, it couldn't have, but maybe it could prove otherwise to me. The reason why an evidentiary hearing didn't occur in this case is because there were no facts that were put into dispute. The defendant has required to bring facts into dispute. But that is, that's not so much a fact, a dispute, as a fact that as to which the details matter as to whether or not, um, there is, um, your, your, your explanation is plausible or not plausible. It's not, it's not a question of a dispute, it's just, you know, he says you didn't have a right to open this candy container because it was a candy container. You say I have a right to open it because it looks to me like something that, that could have contained a weapon. No one knows the answer to that until you have a, an evidentiary hearing about exactly what this thing was. As the court has pointed out earlier, Judge Cowan, I believe, indicated that, uh, there was no dispute regarding the issue of whether he could pull it out and check. And defendant did not claim that, uh, in the district court that this search was unlawful at that point, isn't that true? The only issue that was brought up in the district court was, was the, um, was there a proper Terry stop? They didn't, they obviously didn't complain about the traffic stop, whether the defendant could actually move from the car, whether they could ask about information. Um, none of that was brought up. It was simply whether there was reasonable suspicion to support the pat down. What does the doctrine of inevitable discovery have to do in this case? The reason that was brought forth was because at the initial stop, the officer Anderla got out of his vehicle, went and talked to the driver, Ms. Sherry Copeland, as well as the defendant asking them personal information. He utilized that information on, for computer records to determine what their background was after arresting Ms. Copeland and finding out that she had a rest warrant for a date for a possession of dangerous drugs and for drug paraphernalia. They also ran the records for the defendant, found that he had given false information and had determined independent of any search, a basis for arrest. The officers arrested the defendant for possession of drug paraphernalia and for false information of police officers. All that information, again, the false information was completely independent of any search. He was, he was definitely arrested not only for, for giving false information to a police officer. Correct. He was arrested for both issues. So it's your position that once having, uh, he would have been searched on the giving false information on the, uh, and the ammunition would have been, uh, surfaced in any event as well as the Pez. And not only that, in fact, when he was asked to be, when he was asked to exit the car, there was a Styrofoam cup that was placed between his legs. When they did the search, instant arrest of Ms. Copeland, of the vehicle, there was a glass pipe that was found in there as well, also drug paraphernalia. When did the, what, excuse me, oh, go ahead. What was actually, what was the motion to suppress, trying to suppress? I.e., what, what, it wasn't, was it the arrest? No. It was the, it was what was found in the car? What, what were they trying to suppress that was introduced at trial or could have been, um, uh, that was, um, pertinent to the conviction? They were trying to suppress. They felt that, uh, I believe the way I looked at it, there was two reasons. First was that the. I'm going to ask you for a reason. I'm trying to figure out what, what was used, um, or potentially used stuff. What stuff are we talking about? Unlawful. They, the defense claimed there was an unlawful detention that the defendant should have just. I understand that. You understand my question. What I'm trying to figure out is this, and in order to figure out the inevitable discovery, we have to know what was discovered, um, that they then tried to suppress, I mean, if the only thing that turned out to matter, for example, was the glass, um, pipe in the car, then the inevitable discovery argument looks pretty, pretty right because you were going to search that car no matter what, and you were going to find the glass pipe. Uh, and whether he, he, he left or stayed, it wouldn't have mattered. Even if he'd left, he still would have had the glass pipe. So I'm asking, what is that what's tried to be suppressed? What, what items? The ammunition that was found on the defendant's purse. I see. So, so there, for that, you do need him. Right. You would need him there for that. So because he was. Well, I thought that was also going to the Pez that you say would have, even if you didn't search him for the Pez that, uh, and even if he didn't, if it weren't opened up, that, uh, he would have been arrested in any event and it would have been inevitably discovered under those circumstances. That's correct. Officer. Angela ran the defendant's personal information, found he had given false information and was going to arrest him for that as well. So that really answered the question that you just responded to is that, uh, your, your position is that even if the Pez had been improperly conceded to be improperly have, uh, surfaced and arrested that he would have inevitably been arrested for that because he lied when he lied, he was arrested and he would have been found having not only the ammunition, but also the, uh, the Pez. That is correct. Your honor. In your view, from law enforcement standpoint, when did this traffic stop and, uh, they, they, they stopped the vehicle. It's, uh, your friend across the aisles position that, uh, uh, uh, don't could have walked away, you know, after, uh, they arrested the lady. Well, don't, didn't try to walk away. And that's, what's always been interesting about how they say he wasn't found that she was a fugitive that, uh, they should have arrested her and let him go wherever he wanted. They had no right to pat him down and arrest him. Well, for officer safety, they had the right to pat him down based on the factors that we have already discussed. Only if he was there, if he had the right to leave or should have had the right to leave, um, then, um, then they didn't. If the traffic stop was over, they had no right to stop to detain him or, or, or pat him down. We would only put forth to the court. Number one, that he didn't try to leave. There was no issue regarding that. That's a hypothetical down because he hadn't, because he didn't want to walk away. If someone would have walked in, you couldn't pat them down, right? If he, as the passenger decided to get up and walk away, I suppose that could have occurred in that, in that juncture, you suppose what could have occurred, but the defendant could have got up and just walked away from there. I would think that for officer safety, you can see a little too much. The when is my, my first question was when was this traffic stop terminated? When is it over? Everyone go home. If you're not arrested, stay here. If you're arrested, the officers had a reasonable right to determine the people that they had there. Obviously they found the personal information. That traffic stop was not only part and parcel of the traffic violation that occurred, but also in determining what persons were present there. So as they're running that information in the computer, it has done in a reasonable time. That's when the scene can actually dissolve and go forward from there. In your brief, your position was there was no contested issue of fact, which would necessitate a evidentiary hearing before the district court. Your position is that Pellon is raising an issue of fact here now as to your right to search the Pez, but he made no such issue in the district court. Is that that's you still maintain that position? I take it. In fact, the district court argument was made by a different attorney. This is a separate attorney making this argument here, trying to do the best with the facts that they have. His position is that the, that he might be successor attorney, but the prior attorney raised it in the notice of motion to the district court. What is, how do you read that notice of motion? Defendant is supposed to contest facts. There is nothing in their motion, nor the reply that demonstrates they are contesting any facts that are put forward. They did ask for an evidentiary hearing, did they not? They did ask for that, and that's when the court order came out, subsequent to this, indicating because there are no facts that are contested, we're going to make our ruling. The trial happened four weeks after the ruling came down. There was no motion for reconsideration to somehow correct the court that there was a contested fact that was missing. And in fact, the court ordered a hearing. Well, he came close when he said, defended purportedly shifted in his seat and leaned toward the driver during the stop. It's not a direct dispute, but the use of the word purportedly shifted in his seat and leaned toward the driver during the stop indicates. And I saw that, Your Honor. And that's why we courted the Walzak case in our brief. Evidentiary hearing on a motion to suppress is required if the moving papers are sufficiently definite, specific, detailed, and non-conjectual to enable the court to conclude a contested issue of fact is actually at issue. Well, it is sort of mysterious how this operates. Does he have to submit an affidavit or does the motion simply have to say, this is what we're going to contest? They have to present issues in that. Yes. They have to sufficiently detail that. A judgment sort of a way, i.e. a declaration or just say, you know, we don't, the government says X and we don't agree. My client didn't make this statement. My client did not make sure. Just by stating it as an argument. Yes, Your Honor. Thank you very much for your argument. We'll give you a minute or so. I only have a couple. Excuse me. I only have a couple of points. With regards to the affidavit, I did read a case that California has a general order requiring an affidavit or declaration under oath for motions. We don't have that in Arizona. So it is based upon the motion papers, just for clarification. With regards to the false information that's been raised, I'd ask you to look at that for a second in terms of what the facts are from what we know from the record. The defendant gave the correct last name, the correct date of birth, and I believe a social security number that he gave the officer was off by one number. I think given those facts, the fact that you can determine who someone is by the last name and date of birth, it raises a real question that there may have been miscommunication or something at that scene, which again is a factual issue and a reason for the evidentiary hearing. Could you just read me the motion that your predecessor made in the district court in which you say that he raised the issue before the district judge as to whether or not he had reasonable suspicion to pull out and open the PEZ? I believe. As far as I can tell, the complaint was on the pat-down and not on opening the PEZ. Yes. Well, just read the you've got an obligation to alert the district judge not to whipsaw him in the not to tell us that the district judge was off base when you didn't raise it. Where in the motion for seeking a evidentiary hearing did you put him on notice that there was a question of fact resolved in an evidentiary hearing? In the reply, trial counsel addressed on page 23 of the excerpt of record the fact that the government had raised the furtive movements, the bad area issue, and the warrant, being in the presence of someone in the warrant. And then if you go to page 27, it says the driver had been arrested, Mr. Doan had complied with their orders, had exited the car upon the officer's orders, and answered their questions. The police detained him merely so they could run him on the computer. They had no authority to detain him for this purpose. But you've got to put, you know, we knew this was going to be an issue before the argument here, and I specifically had my clerks do some research on Ninth Circuit law, and as I understand the law here is that you have to bring to the district court's attention the fact, or alleged facts, that you want to be the subject of an evidentiary hearing. How does that put the district judge on notice of the fact that you're contesting the police's ability to look at the PES? In the motion to suppress, it was a general motion to suppress evidence which was made by trial counsel where she set forth the facts as she understood them to be, and then relied upon Thomas and Terry in terms of the scope of the search as having been exceeded. Thank you very much, counsel. We thank both counsel for a useful argument, and the case of United States v. Stone is submitted. We will go on to United States v. Wren.
judges: D.W. Nelson, Cowen, Berzon